We have three argued cases today and two submitted cases. The first argued case is number 2012-1158, Henry Freeman, Mr. Rourke. Thank you, Your Honor. My name is Chris Rourke, and I represent the Real Party and Interest in Appeal because software. The board erred in this case because they construed the claim terms of the rejected claims based on the cited reference, which I pronounce froze, instead of on the teachings of the specification, which is in contradiction to this court's long-standing precedent and also results in the predictable result that the claims were rejected under that reference. Briefly, the claims relate to systems for designing, estimating, and scheduling buildings. And you take the system uses elements that are defined using three-dimensional data. The elements are also related to each other in a spatial location tree, which provides additional relational information for the elements. The elements have recipes, methods, and resources associated with them. My impression is that the construction that you're now urging for spatial tree structure was not raised before the PTO. Is that correct? I would disagree, Your Honor, respectfully, because I'd argue that the claims, when properly construed, weren't disclosed and froze. Where did you specifically make it? Pardon me? Where did you specifically make that tree argument? Well, the first time it really came into – well, the tree argument was first raised by the examiner in the examiner's reply, which he apparently understood that the spatial tree structure limitation was being disputed, that it wasn't present and froze. But he identified a spatial tree structure that had all element and then methods, resources, and recipes. And in response to that, I argued that that was improper. Where? In my reply brief. I understand, but I think we'd like to see what page. Yes, sir. That we can look at. Thank you. That would be on appendix A-225. No, I don't see where that talks about this three-dimensional structure. Well, it states at the bottom of the page that it's clear from the plain language of the claim that it's the elements that are in the spatial tree structure, not one or more recipes associated with each element. That's it? It says that the claim system is disclosed in the specification and that nowhere is there a tree structure like the examiner asserts is the proper construction of these claim elements. And that it's unreasonable to construe the claims to cover something that's not even in the application itself. Do you have anything more persuasive than that? I wish I did in the appeal brief to the board, but sir, I think I raised the issue. The examiner is free to identify additional grounds for rejection in the tribal brief, which he did, and I have an obligation to respond to those, and I think those are right for review by this court. But moving on, so the elements have the associated recipes, methods, and resources, and the invention applies variances to these. Variances are, as disclosed in the specification, ranges that more accurately reflect things like resources or time that might be required to create this element. So an element might be a brick wall section. The prior art would model that with 100 bricks, but in reality there will be a range of bricks, say from 100 to 120, where the actual number of bricks depends on a number of variables, such as whether or not there are defective bricks, if sections of the wall have to be reworked, and other variables. So by putting these ranges into the model, the resulting estimates and schedules are more accurate. They give you a better idea of how long it will actually take for the building to be constructed, what the actual material requirements are. Running out of materials can add delay, so being able to order enough materials for the building is important. Now the board construed the limitation of an estimate system applying one or more variances to one or more of the recipes, methods, or resources as being disclosed by pros as some work crews that were variables that could be applied to variables. There are two problems with this construction by the board. First of all, pros doesn't really disclose applying those work crews to variables. It has two different work crews, but it looks like those are two unrelated work crews for two different things, such as building a wall and building a floor. The pros reference never discloses that these are two different work crews for modeling two different potential costs for estimating purposes. The second problem with that is that work crews are defined in pros as a collection of resources. So even if you're replacing one work crew with another in a manner that's not even disclosed in pros, that would be equivalent to replacing a resource in the model with a different resource. So it's not applying a variance to the resource. It's just replacing an existing resource. The second claim term is the spatial location tree structure, or limitation, which we've briefly discussed. And figure five of the specification is, I think, the clearest example of what a spatial location tree could be represented as on paper. In reality, it's a logical construct, just like the tree structures for your files on your computer. You open a folder, and then there's maybe additional folders, and then there are files in those folders. There's no location data associated with those files. The files are stored all over your hard drive. They're not actually within any particular delineation within the memory device of the computer. The spatial location tree structure has spatial relationships between the elements, so that you can see that there are columns associated with a certain slab on a certain floor. And this allows the software, the program, the system, to schedule more accurately. If you had 100 wall segments that had to be built, they could all be built in series, or they could all be built in parallel. The spatial location tree tells you how that has to happen. You can't get that information just from a three-dimensional design like a CAD drawing. That doesn't impart any sequence data into the element information. The board's construction of that term... Well, the board doesn't really have a construction of the term. They did note it, that the examiner had that construction, but then they never made a finding of fact as to what a spatial location tree was, or what was disclosed in FROZE that is a spatial location tree. So, I mean, there's really a big error there. We don't really know what the board considered to be a spatial location tree in FROZE. But if it is the structure... Did the board say that the recipes, components, and resource components of FROZE could exist in the spatial tree structure? They may have said that. I don't recall them saying that. But if they did, they really can't, because the recipes, methods, and resources are associated with an element that is in a spatial location tree, and it has a single location. So without having an additional structure... I mean, the claims cover one or more elements, but the elements have to be in a spatial location tree relative to other elements to be that one or more element. You can't have a single element by itself that's in a spatial location tree. You don't have to necessarily perform the method on every single element in the spatial location tree. But the element can be in a spatial location tree without some other element that it's relative to. Yes, sir? Well, I'm going to ask the government to address that, because I don't read what they said is congruent with what you're saying. So I'll hear what they say. Maybe they can correct me. Thank you. So, again, the methods, recipes, resources that are associated with elements don't have any spatial connotation. You don't perform them in any relationship to the element other than right at the element in the spatial location tree. The third term is the recipes, methods, and resource components, which is also missing from CROWS. If you construe that based on the specification, we see that the recipes can be all the information that's needed for an element. This is everything that you would need for your wall, from inspections to running wiring, plumbing, finishing, if you have to do rework, how you would do the rework. The specification clearly describes it as all of this information. So when it talks about a collection of methods, it means this entire collection of methods. CROWS discloses at least, maybe at best, a single method for building a section of a wall, which has install studs, install drywall, and tape. It doesn't have anything about inspecting, how to rework, how you install studs. You need some additional material. You need some additional method steps to install the studs. So I'm not even sure that CROWS discloses a method, but if all those three things are a method, it's only a single method, it's not a collection of methods. So while CROWS may disclose methods or some tasks, because I think that's a more appropriate characterization, and some components, I guess, are used for that task, you're installing studs, there must be some studs, but what else do you need? It doesn't disclose that. It doesn't disclose this recipe that's associating those with an element. So... Okay, you're into your rebuttal time. Do you want to save the rest of it? Yes, thank you. Mr. Weedenbough. Thank you, Your Honor, and may it please the Court. I'll turn first to Judge Wallach's question about the spatial location tree. At 8-4, the Board does credit the examiner's finding that the spatial location tree exists and it has elements arranged with recipes, method components, and resource components. But that's the background section of the opinion. That's not, like, it doesn't make it clear that the Board is adopting that. That's correct, and part of the reason, or the entire reason for that is because, as the Court's questions indicated, Freeman waived that argument in front of the Board. It didn't raise that argument in its appeal brief before the Board as Freeman now concedes. And the only mention in its reply brief was a brief aside mention about how it didn't satisfy the recipe limitation. Nor did Freeman raise it in its request for rehearing at 8-241. It was limited to Claim 14. It didn't address Claim 1 at all. So the Board didn't say any more about it because it didn't understand Freeman was challenging that finding at all. On the variance issue, there's no indication that the variance should be limited to a particular statistical figure based on the data set. I think the Board correctly read the specification as implying that it related to variations in the design data. And I'll just note that because the other side's argument was limited to 102, we're not going to address the 101 issue. And if there are any questions, we'll stand on our briefs on that. Thank you very much. Mr. Roark. Thank you, Your Honors. In response to the Director's arguments, I disagree that there was waiver. The Director hasn't identified one single legal precedent that would establish that there was a waiver in this case. The issue was raised by the examiner. The Patent Office procedures allow the examiner to raise new issues on appeal. They allow the appellant to respond to those. And if the appellant wants, they can reopen prosecution even. We didn't elect to do that. But we did respond to the construction of the spatial tree structure that the examiner understood. So I don't think that that issue's been waived. The office also referred to A214 in regards to that issue. But I'm not sure exactly what they were referring to. That was a section of the examiner's answer that doesn't really, it's Claims 3 and 4. We addressed in Claim 1, in regards to Claim 1, this spatial tree, spatial location tree structure identified by the examiner on A225. So it was preserved, I would argue, very strongly. If there are no further questions, I'll turn my time to the Board. Thank you, Mr. Mayor. Thanks, Board of Council. The case is submitted.